UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIC C. RUIZ,

              Plaintiff,

   v.

NANCY A. BERRYHILL,

              Defendant.

CASE NO. C17-545 JLR-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Eric C. Ruiz appeals the denial of his application for Supplemental Security Income. As discussed below, the Court finds that substantial evidence does not support the ALJ's determination that Mr. Ruiz did not meet Listing 12.05C for "intellectual disability" effective during the relevant time period.[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1. The Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the matter for an immediate award of benefits.

---

[1] The relevant period is June 6, 2011 to July 25, 2014, and throughout that period Listing 12.05C applied. *See, e.g.*, 20 C.F.R. pt. 404, subpt. P, app. 1 (effective Feb. 26, 2014 to Dec. 8, 2014). The current Listing 12.05, effective August 22, 2017, contains no subsections C and D, and was revised to reflect new "A" and "B" criteria.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Before the application at issue here, Mr. Ruiz was awarded SSI benefits. He is also currently receiving benefits. In 2007, Mr. Ruiz was awarded benefits based on Listing 12.05C, at that time referred to as mental retardation, but those benefits were terminated when he was incarcerated. *See* Tr. 59, 1259. After his release from prison, Mr. Ruiz filed the June 2011 application for SSI benefits that is at issue here. The ALJ denied the June 2011 application and the Appeals Council affirmed, but the district court reversed and remanded for further administrative proceedings. *See* Tr. 1268–76. During the pendency of the remand, Mr. Ruiz was awarded SSI benefits for having met the listings with regard to a July 2014 application. Tr. 1284–85, 1334. This case thus covers only the dates between his two successful SSI applications minus the period he did not receive benefits due to incarceration: **June 6, 2011 to July 25, 2014**. *See* Tr. 1287, 1334.

Since the outset, Mr. Ruiz's theory of disability has been that beginning at latest in 2006, he met Listing 12.05C for intellectual disability. *See* Tr. 59 (2012 hearing transcript); Tr. 1284–85 (2016 hearing transcript). Nonetheless, neither in her 2012 decision nor in her 2017 decision did the ALJ meaningfully address whether Mr. Ruiz's mental limitations met or equaled Listing 12.05C at step three of the sequential analysis. In the original 2012 decision, the ALJ found at *step two* that Mr. Ruiz's borderline intellectual functioning constituted a severe impairment. Tr. 36. The ALJ did not discuss at *step three* whether Mr. Ruiz met Listing 12.05C for intellectual disability, instead evaluating Listings 12.02 (Organic Mental Disorders) and 12.09 (Substance Abuse Disorders) before concluding that Mr. Ruiz did not meet any of the listings. Tr. 37–38. The ALJ assessed residual functional capacity ("RFC"), noted that Mr. Ruiz had no past relevant work, and found him to be not disabled. District Judge Marsha Pechman reversed and remanded

REPORT AND RECOMMENDATION - 2

the ALJ's decision for two reasons: (1) the ALJ failed to address the 2006 medical opinion of Raymond Parker, Ph.D., a three-day examination that led to diagnoses of depression and a cognitive disorder as well as low intellectual functioning, all of which led to Mr. Ruiz being awarded SSI benefits in 2007; and (2) the ALJ failed to address the medical evidence of a depression diagnosis. Tr. 1275.

After remand, in the 2017 decision the ALJ *withdrew* her prior determination at step two that borderline intellectual functioning constituted a severe impairment because "there are actually no reasonably reliable IQ scores in the record to evaluate a diagnosis of [borderline intellectual functioning] under listing 12.05." Tr. 1248. The ALJ determined that Mr. Ruiz had the following severe impairments: organic mental disorder—learning disorder NOS and cognitive disorder NOS status post traumatic brain injury ("TBI"); seizure disorder; and substance abuse in remission. *Id.* Then, at *step three*—when the ALJ should have evaluated whether Mr. Ruiz's impairments met or equaled a listed impairment—the ALJ evaluated whether his mental impairments met Listings 12.02 and 12.09 but did not discuss the requirements of Listing 12.05. Tr. 1249–50. For RFC, the ALJ determined that Mr. Ruiz could perform light work with certain physical, social, and learning restrictions. Tr. 1250–57. Although the ALJ reviewed Dr. Parker's 2006 medical opinion, she curiously ignored Judge Pechman's additional directive to evaluate the medical evidence of depression. *Compare* Tr. 1275 (Judge Pechman's order) *with* Tr. 1253–55 (ALJ's discussion of Dr. Parker's opinion). At step four, the ALJ noted that Mr. Ruiz had no past relevant work and, at step five, that he was not disabled because there were jobs in the national economy that he could do. The ALJ's post-remand, 2017 decision was the Commissioner's final decision. *See* 20 C.F.R. § 416.1484. This appeal followed.

REPORT AND RECOMMENDATION - 3

**DISCUSSION**

Although Mr. Ruiz raises six issues, Dkt. 10, at 1–2, the court addresses only the ALJ's error at step three because it is determinative. The Court finds that the ALJ harmfully erred as a matter of fact and law by failing to support with substantial evidence that Mr. Ruiz's mental limitations did not meet or equal Listing 12.05C.[2] Because Mr. Ruiz meets Listing 12.05C and further development of the record would serve no useful purpose, the Court recommends reversing and remanding for an immediate award of benefits.

The Social Security Regulations "Listing of Impairments" enumerates and establishes criteria for impairments so severe they preclude a person from performing gainful activity. *Young v. Sullivan*, 911 F.2d 180, 183–84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At step three of the five-step disability analysis, the ALJ considers whether the claimant meets any of the listings. If the claimant meets all the requirements for any one of the listings, the ALJ is required to find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d). To meet Listing 12.05C for intellectual disability, a claimant must show: (**1**) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (**2**) a valid IQ score of 60 to 70; and (**3**) a physical or other impairment imposing an additional and significant work-related limitation. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.05, 12.05C.

Here the ALJ considered several listings but at step three inexplicably declined to discuss Listing 12.05C, which pertains to "intellectual disability." Tr. 1249–50. Instead, the ALJ concluded at *step 2* that she would not consider a Listing 12.05 intellectual disability because

---

[2] The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

REPORT AND RECOMMENDATION - 4

"there are actually no reasonably reliable IQ scores in the record." Tr. 1248. The ALJ dismissed the validity of Mr. Ruiz's January 2007 full-scale IQ score of 66 because it was "very remote" in time. *Id.* The ALJ questioned the validity of the January 2012 IQ score of 74 and the May 2012 IQ score of 50 because: (1) the two scores, assessed only months apart were so different; (2) the score of 50 was interpreted with caution due to Mr. Ruiz's questionable motivation; (3) his abilities at other times appeared to contradict a low IQ even though he may have been impaired by alcohol and marijuana. *Id.* In sum, though the ALJ did not explicate her reasoning, the ALJ found that Mr. Ruiz could not satisfy the second prong of Listing 12.05C—a "valid verbal, performance, or full scale IQ of 60 through 70"—because all of his IQ scores were invalid. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C.

An ALJ is permitted to find that an IQ score is invalid. *See Thresher v. Astrue*, 283 Fed. Appx. 473, 475 (9th Cir. 2008). The Ninth Circuit has yet to address what factors should be considered in assessing the validity of an IQ score. However, "[c]ourts outside the Ninth Circuit permit an ALJ to consider several factors in assessing the validity of test results, such as evidence of malingering or feigning results, daily activities inconsistent with the alleged impairment, and psychologists' opinions that are supported by objective medical findings." *Martinez v. Colvin*, 2015 WL 4662620, at *5 (E.D. Cal. Aug. 5, 2015); *see, e.g.*, *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) ("Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole."); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003) ("[A]n ALJ may reject scores that are inconsistent with the record."); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence of the record on the claimant's daily activities and behavior.").

REPORT AND RECOMMENDATION - 5

1  Even if one presumes for the sake of argument that the ALJ properly invalidated the 2012
2  IQ scores, the ALJ still cited no cognizable rationale for invalidating Mr. Ruiz's January 2007
3  qualifying IQ score of 66. The ALJ rejected the January 2007 score because it was too remote in
4  time. That reason is at odds with the case law and misinterprets the language, intent, and
5  structure of the listings for intellectual disabilities. When an IQ test yields multiple scores "e.g.,
6  where verbal, performance, and full scale IQs are provided" in a single test such as in a Wechsler
7  series test, the courts must use the lowest of the scores when assessing whether a claimant meets
8  Listing 12.05C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c). Courts in the Ninth Circuit
9  have interpreted the regulations to prefer the lowest score not just from a single test *but also from*
10 *among multiple IQ tests*. *See Borders v. Colvin*, 2014 WL 6901177, at *5 (D. Or. Dec. 3, 2014);
11 *Low v. Colvin*, 2014 WL 4968285, at *5 (E.D. Cal. Sept. 30, 2014); *Ray v. Chater*, 934 F. Supp.
12 347, 350 (N.D. Cal. 1996). As such, when evaluating whether a claimant with multiple IQ tests
13 qualifies as intellectually disabled, courts use the lowest valid verbal, performance, or full scale
14 IQ score from among all the tests. *See, e.g.*, *Hutnick v. Colvin*, 2014 WL 880360, at *5 (E.D.
15 Cal. Mar. 5, 2014); *Anthony v. Colvin*, 2014 WL 3792780, at *3 (C.D. Cal. July 31, 2014).
16 Courts have adhered to this rule even when the claimant's most recent IQ score is the higher
17 score and does not qualify under 12.05C. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.
18 1987) (IQ requirement for 12.05C satisfied where claimant had qualifying score in 1982 and
19 nonqualifying score in 1983); *Borders*, 2014 WL 6901177, at *6 (IQ requirement for 12.05C
20 satisfied where claimant had qualifying score in 2008 and nonqualifying score in 2010); *Lewis v.*
21 *Astrue*, 2008 W 191415, at *6 (N.D. Cal. Jan. 22, 2008) (only claimant's lowest score is relevant
22 to Listing 12.05C regardless of whether the record contains a subsequent higher score). The ALJ
23 cannot invalidate an IQ score Mr. Ruiz obtained while already an adult merely because the test

REPORT AND RECOMMENDATION - 6

1  was administered earlier. While qualifying IQ scores of above 40 obtained between the ages of 7

2  and 16 are valid only for two years, the regulations state that the results of IQ tests "tend to

3  stabilize by the age of 16." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D(10). "Intellectual

4  deficits are deemed to be a permanent, relatively static condition," not a byproduct of changing

5  circumstances. *Heller v. Doe*, 509 U.S. 312, 323 (1993). If anything, the timing of Mr. Ruiz's

6  2007 IQ score reinforces rather than detracts from its validity. The first prong of Listing 12.05C

7  provides that a claimant must show that his or her intellectual disability began before the age of

8  22. Mr. Ruiz's January 2007 IQ score of 66 was obtained days before his 20th birthday. *See* Tr.

9  1563–67.

10  Moreover, none of the reasons the ALJ cited for invalidating the 2012 IQ scores

11  undermine the validity of the 2007 IQ score. First, although the ALJ questioned why Mr. Ruiz

12  obtained a May 2012 IQ score of 50 only months after a January 2012 IQ score of 74, there is no

13  dispute that all three IQ scores demonstrate a finding of mild to moderate intellectual disability,

14  and even the highest score was only a few points above the qualifying range under Listing

15  12.05C. Second, although the ALJ questioned Mr. Ruiz's motivation on the May 2012 test that

16  resulted in an IQ score of 50, the examiner Victoria McDuffie, Ph.D., nonetheless declined to

17  conclude, as she had a year earlier, that he was malingering. *Compare* Tr. 1089 (Dr. McDuffie's

18  May 2012 report) *with* Tr. 404 (Dr. McDuffie's June 2011 report). Instead, Dr. McDuffie opined

19  that "[o]verall, the testing results suggest marked impairment in his cognitive functioning as

20  applied to occupational endeavors." Tr. 1090. Third, none of Mr. Ruiz's abilities and daily

21  activities cited by the ALJ—for example, the progress he made in special education before

22  dropping out of high school, maintenance of a long-term, romantic relationship, and scoring

23

1  24/30 on a mini-mental status exam[3]—are inconsistent with an IQ score of 66. *See* Tr. 1250–55.

2  Mr. Ruiz has no relevant past work, spent his entire educational history in special education, and

3  never obtained his GED. *See, e.g.*, *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007)

4  (holding that the claimant's intermittent work history as a tree trimmer supported his IQ); *Bailey*

5  *v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000) (holding that the ALJ erred in rejecting the IQ

6  score of a claimant whose "work history was limited primarily to working for his father");

7  *Brown v. Secretary of HHS*, 948 F.2d 268, 270 (6th Cir. 1991) (holding that the claimant's

8  ability to use public transit, have a driver's license, and visit friends, as well as to log mileage,

9  hours worked, and the places he drove in his job as a truck driver were not inconsistent with a

10 valid IQ of 68); *see generally Fanning*, 827 F.2d at 634 (recognizing that if plaintiff otherwise

11 meets Listing 12.05C, he "must be found disabled" without consideration of his work history as

12 a laundry loader, janitor, and dishwasher).

13   The Commissioner does not attempt to defend substantively the ALJ's assessment that

14 Mr. Ruiz's impairments do not meet Listing 12.05C. Instead the Commissioner argues that Mr.

15 Ruiz's assertions about meeting Listing 12.05 "are too underdeveloped to preserve any challenge

16 to the ALJ's step three finding." Dkt. 11, at 3. The court rejects the Commissioner's position as

17 inaccurate. Throughout the administrative proceedings and before this court, Mr. Ruiz has

18 argued that Mr. Ruiz meets the listings based on his intellectual disability. *See, e.g.*, Tr. 59; Tr.

19 1284–85; Dkt. 10, at 7–8; Dkt. 12, at 4. The listings serve as the basis for his past and current

---

[3] The Mini Mental State Examination ("MMSE") is a 5 to 10 minute tool designed to screen for dementia. *See* Sana Loue & Martha Sajatovic eds., ENCYCLOPEDIA OF AGING AND PUBLIC HEALTH 567 (Springer Science+Business Media 2008). Health-care professionals use the MMSE to assess dementia and the progression of Alzheimer's disease, not to diagnose whether someone has a lifelong intellectual deficit. *See id.* The ALJ erred by suggesting that Dr. McDuffie's 2012 opinion was internally inconsistent based on Dr. McDuffie's findings that Mr. Ruiz had both a low IQ and a "normal" MMSE. Tr. 1254.

REPORT AND RECOMMENDATION - 8

awards of benefits. It is the ALJ, not Mr. Ruiz, who declined to adequately address Listing 12.05C at step three of the sequential analysis.

Because the court finds that Mr. Ruiz submitted a valid IQ score of 66 obtained shortly before he turned 20 years old, Mr. Ruiz has satisfied the first two prongs of Listing 12.05C. The third prong is that he must have a physical or other impairment imposing an additional and significant work-related limitation. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.05, 12.05C. According to the regulations and case law, if an ALJ finds an impairment to be "severe" at step two, "that impairment necessarily has more than a slight or minimal effect on claimant's ability to perform basic work activities" and thus fulfills the third prong of Listing 12.05C. *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1015 (D. Or. 2011); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). At step two, the ALJ found that Mr. Ruiz had, in addition to an organic mental disorder, the severe impairments of seizure disorder and substance abuse in remission. Tr. 1248. Mr. Ruiz has therefore shown that he meets the third prong of Listing 12.05C.

Based on the evidence on the record, the ALJ should have found Mr. Ruiz to be presumptively disabled under Listing 12.05C. The ALJ's finding to the contrary was harmful legal error and was not based upon substantial evidence. *See Molina v. Astrue*, 675 F.3d 1104, 1115–17 (9th Cir. 2012). Mr. Ruiz is presumptively disabled and, therefore, there are no outstanding issues that must be resolved before a determination of disability can be made. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (remanding for payment of benefits because plaintiff met or equaled a listing at step three). Additional development of the record will not

change that Mr. Ruiz meets Listing 12.05C. Accordingly, remand for an immediate calculation and award of benefits is appropriate. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for an immediate award of benefits.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **November 9, 2017**. If no objections are filed, the Clerk shall note the matter for November 10, 2017, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 26th day of October, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge